UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NICOLE HINCKLEY                                                                                          PLAINTIFF

V.                                                                    CIVIL ACTION NO. 3:25-CV-596-DPJ-ASH

CITY OF BRANDON, MISSISSIPPI                                                                       DEFENDANT

ORDER

In this action under the Fair Housing Amendments Act, Plaintiff alleges she suffers from one or more disabilities and claims emotional-distress damages. To explore alternative causation theories, Defendant City of Brandon, Mississippi (the "City") has asked Plaintiff Nicole Hinckley to sign two medical-records-release authorizations. Each authorization would allow the City to obtain medical records dating to December 15, 2015. Plaintiff objects that the scope of the authorizations is too broad, both as to the types of records and the timeframe. The City has filed a motion to compel her to execute the authorizations and to identify her medical providers. Mot. [48]. As explained below, the Court grants the motion.

I.       Facts and Procedural History

Nicole Hinckley filed this civil-rights action in August 2025. Her complaint centers on a municipal ordinance which prohibits keeping pit-bull-type dogs within the City. Hinckley, a resident of the City, owns two pit bulls that she says are emotional-support animals and thus exempted from the ordinance's prohibition. The City disagrees and has refused to grant Hinckley's application for a variance. Hinckley alleges that this refusal constitutes a violation of the Fair Housing Amendments Act ("FHAA"). She further alleges violations of her procedural-due-process rights under the Fifth and Fourteenth Amendments stemming from the City's consideration of her variance application.

The Court issued Case Management Order [31] in November 2025. That Order required Hinckley to execute a HIPAA-compliant medical authorization. *Id.* at ¶ 6.F.3. Pursuant to paragraph 6.F.4., the Parties participated in a telephonic discovery conference on March 27, 2026. The Parties were unable to reach an agreement. So, the Court authorized the City to file this motion to compel [48]. Hinckley timely filed a response in opposition [56], to which the City filed a reply [59].

The City's motion asks the Court to compel Plaintiff to "identify all medical providers for the ten-year period prior to filing this lawsuit," and to "execute general medical authorizations permitting [the City's] counsel to obtain corresponding medical records." Mot. [48] at 1. The City wants Hinckley to execute two separate authorizations. *See* Attach. [48-1] at 1–4. The first is a "General Release" and would allow the City to access all of Hinckley's medical records, regardless of type, for the period December 1, 2015, to present. *Id.* at 1. The second is a "Psychotherapy Release" and would allow the City to access Hinckley's psychotherapy records for the same period. *Id.* at 4.

Hinckley objects to both releases. As to the General Release, Hinckley argues that records of her general medical history are irrelevant to this case. As to the Psychotherapy Release she argues that the timeframe sought is too broad. The City argues that the material sought is relevant and that the timeframe is appropriate.

II.    Analysis

The scope of discovery is governed by Rule 26(b). It allows for the discovery of:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case—which are related but distinct requirements." *Samsung Electronics America Inc. v. Chung et al.*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, to be discoverable, the material sought must be both relevant to a claim or defense, *see Zenith Ins. Co. v. Tex. Ins. for Surgery, L.L.P.*, 328 F.R.D. 153, 160 (N.D. Tex. 2018), and when weighed against the 26(b) factors, proportional to the needs of the case, *Mir. v. L-3 Communications Integrated Systems, L.P.*, 319 F.R.D. 220, 225–26 (N.D. Tex. 2016).

When a party objects to discovery requests, the seeking party may move for an order to compel discovery under Federal Rule of Civil Procedure 37(a)(3)(B). On a motion to compel, "[t]he party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

A.      Scope of Medical-records-release Authorizations

Hinckley argues that the release authorizations the City seeks should only cover mental-health records, and further that they should be limited to a three-year time-period. Pl.'s Reply [57] at 1–2. She cites numerous out-of-circuit cases that are neither binding nor persuasive. *Id.* at 3–6. For instance, she relies on *Sheets v. Sorrento Villas*, No. 8:15-CV-1674-T-30JSS, 2016 U.S. Dist. LEXIS 69227, at *9 (M.D. Fla. May 26, 2016), for the proposition that her general-medical records are irrelevant. But *Sheets* does not support that contention. Instead, *Sheets* supports

3

allowing the City "to seek records relating to any emotional distress" Hinckley may have suffered. *Id.*[1]

Moreover, it is Hinckley herself who has put her medical records in issue. She has done so in two ways: (1) by bringing a claim under the FHAA alleging she has a disability, and (2) by seeking emotional-distress damages. Consequently, Hinckley's disability status and mental-health are relevant to both meeting her threshold burden—showing she is disabled under the FHAA—and proving damages. *See Rogers v. Orleans Parish Sheriff Office*, No. 22-5303, 2025 WL 3760764, at * 8 (E.D. La. Dec. 30, 2025) (alterations in original) (citations omitted).

The law is clear that Hinckley has waived the physician–patient privilege. "[A] party whose pleadings place in issue any aspect of that party's physical, mental, or emotional condition thereby—and to that extent only—waives the privilege." *Taylor v. Smith & Nephew, Inc.*, No. 3:18-CV-234-DPJ-JCG, 2019 WL 13207593, at *2 (S.D. Miss. Oct. 24, 2019). Indeed, "[c]ourts have routinely" found waiver of the medical privilege in this context. *Rogers*, 2025 WL 3760764, at * 8; *accord Brister v. Crete Carrier Corp.*, No. 1:25-cv-361-HSO-BWR, 2026 WL 1397055, at *2 (S.D. Miss. May 19, 2026). For example, "[w]hen a plaintiff asserts a disability discrimination claim, her underlying disability is necessarily put at issue, making medical records relating to that disability relevant and broad discovery appropriate." *Rogers*, 2025 WL 3760764, at * 8. "And when a plaintiff seeks emotional distress damages, her mental conditions

---

[1] Hinckley has the same problem with her argument in favor of limiting the releases to a three-year period. She predominately cites out-of-circuit decisions that are also factually distinguishable. Resp. [57] at 3–6. And the one in-circuit case she cites would counsel in favor of granting the City's preferred ten-year time-period. *See id.* at 6 (citing *Thomas v. City of Vicksburg*, No. 3:22-CV-542-HTW-LGI, 2023 U.S. Dist. LEXIS 138600, at *8 (S.D. Miss. Aug. 9, 2023)).

and related physical conditions are put at issue, making medical records relating to thereof relevant and broad discovery appropriate." *Id.*

Hinckley contends that the City should be limited to medical discovery only from mental health providers. But "[b]asic fairness requires the other party be allowed to explore the truth of the [party's] allegations that he/she suffered . . . emotional distress as a result of the [other party's] conduct and to determine whether the [party] suffered any pre-existing . . . emotional distress that may be the (or an) actual cause of the distress." *Rogers*, 2025 WL 3760764, at * 8; *see also Thomas v. City of Vicksburg*, 3:22-CV-542-HTW-LGI, 2023 WL 5111977, at *2 (S.D. Miss. Aug. 9, 2023). "The Court will not require [Hinckley's] medical providers to limit their production of [Hinckley's] medical history to certain conditions or body areas." *Brister*, 2026 WL 1397055, at *3. The City "is entitled to discover [Hinckley's] medical history outside of the strict areas complained about, as [the City] may develop alternative theories about the cause of injuries through a holistic analysis of [Hinckley's] medical history." *Id.* (quoting *Gemmill v. All. for Affordable Servs.*, No. 3:08-CV-650-HTW-LRA, 2010 WL 623626, at *2 (S.D. Miss. Feb. 18, 2010)). Thus, the two categories of records the City seeks—general-medical and mental-health-specific records—are both discoverable.

That leaves the question of how many years of medical records the City may obtain. Hinckley's arguments limiting the scope to the last three years are unconvincing. Indeed, her own expert claims that he will rely on records for the seven years that he has treated her. The City argues that "from precedent and common sense that ten years is a reasonable baseline." Def.'s Mem. [49] at 4; *see also* Reply [59] at 1 (citing *Gemmill*, 2010 WL 623626, at *2, for the proposition that the City is entitled to "a holistic analysis of [her] medical history"). Neither party points to any binding precedent dictating a particular term of years. Indeed, the guiding

principle is found in Rule 26(b)'s test for relevance and proportionality. But the City is correct that the prevailing view among courts in this district is that ten years is generally an appropriate starting point. *E.g.*, *Brister*, 2026 WL 1397055, at *3; *Taylor*, 2019 WL 13207593, at *3.

The Court need not rely only upon the prevailing view to resolve the issue. Hinckley's expert's reliance on his seven years of treatment clearly place in issue her medical records going back at least to 2019. Ex. B, Expert Designation [48-2] at 3 ("Dr. Galston is expected to testify regarding and relating to his care and treatment of Plaintiff which began in April 2019 and continu[es] to present . . . ."). And the City has closed the remaining three-year gap by pointing out that documents Hinckley has already produced in discovery indicate her depression began around 2018 and that she attended a program for her eating disorder in 2015. Reply [59] at 4. Depression and bulimia are among the mental health impairments about which Hinckley claims Dr. Galston will opine. Expert Desig. [48-2] at 3–4. Specifically, Dr. Galston apparently will testify that "Hinckley lives with two emotional support animals, Jackson and Ghost, which have proven to be very helpful in reducing the symptoms of [her] anxiety, depression, and bulimia and improving her level of functioning." *Id.* at 4.

The City's request for medical discovery spanning ten years is appropriate and reasonable in light of Hinckley's onset of depression in year eight and her eating-disorder treatment in year ten. Moreover, Hinckley has not pointed to any proportionality factors that would weigh against a ten-year time frame. The City intends to obtain medical records directly from Hinckley's providers, so the burden on Hinckley is mitigated. And as to her privacy concerns, the parties have already submitted and the Court has entered an Agreed Protective Order [40] controlling the use of "discoverable medical, psychological records, and/or therapeutic records."

Therefore, the Court will permit the City to discover Hinckley's records for the ten-year period preceding the date Hinckley filed this action, and require Hinckley to execute the City's requested medical-records authorizations.

B.    List of Medical Providers

Aside from opposing a ten-year time frame and discovery beyond mental-health-care providers, Hinckley never directly addresses the City's request that she be compelled also to *identify* all of her medical providers. Because the Court finds the City is entitled to general medical discovery and that ten years is reasonable, the Court also finds that Hinckley should be compelled to identify her medical providers.

III.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, the City's motion to compel [47] is granted.

IT IS, THEREFORE, ORDERED that, on or before May 29, 2026, Hinckley shall provide to the City executed copies of the releases attached as Exhibit A [48-1] to the City's motion. Hinckley shall leave the provider name blank on the releases to be completed by the City.

IT IS FURTHER ORDERED that, on or before May 29, 2026, Hinckley shall identify all of her medical providers for the ten-year period preceding the date she filed this action. The Court specifically orders Hinckley to produce to the City a list of her medical providers that identifies each medical provider's name, clinic/business name, and address (or, if the address is not known, the city and state).

**SO ORDERED AND ADJUDGED** this the 22nd day of May, 2026.

s/ *Andrew S. Harris*
UNITED STATES MAGISTRATE JUDGE

7